**Francis McGUIGAN, Plaintiff,**

v.

**RELIANCE STANDARD LIFE INSURANCE COMPANY, Defendant.**

**Civil Action No. 02–7691.**

United States District Court, E.D. Pennsylvania.

April 9, 2003.

Alan L. Frank, Frank & Rosen, Elkins Park, PA, Marc H. Snyder, Frank & Rosen, Philadelphia, PA, for Plaintiff.

Heather J. Holloway, Rawle & Henderson LLP, Philadelphia, PA, for Defendant.

ROBERT F. KELLY, Senior District Judge.

Presently pending before this Court is Defendant's Motion to Dismiss Count II of Plaintiff's Complaint in which Plaintiff, Francis McGuigan ("McGuigan"), alleges that the Defendant, Reliance Standard Life Insurance Company ("Reliance"), improperly denied his insurance claim and, in doing so, violated 42 Pa. Cons.Stat. Ann. § 8371 ("Section 8371"), the Pennsylvania bad faith statute. This case calls upon the Court to decide whether the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., preempts the Pennsylvania statute which prohibits bad faith conduct in connection with the denial of insurance benefits. For the following reasons, Defendant's motion will be granted.

## I. BACKGROUND

McGuigan brings this ERISA plan enforcement action alleging that Reliance wrongfully failed to pay disability benefits due to him under the long-term disability plan of his employer, Heraeus Electro–Nite. McGuigan also asserts a claim against Reliance for bad faith, pursuant to Section 8371, in connection with Reliance's alleged wrongful denial of benefits. Reliance contends that the statutory framework of ERISA preempts the Pennsylvania bad faith statute and requests this Court to dismiss Plaintiff's bad faith claim.

## II. STANDARD OF REVIEW

A motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), tests the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A court must determine whether the party making the claim would be entitled to relief under any set of facts that could be established in support of his or her claim. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)(citing Conley, 355 U.S. at 45–46, 78 S.Ct. 99); see also Wisniewski v. Johns–Manville Corp., 759 F.2d 271, 273 (3d Cir.1985). In considering a motion to dismiss, all allegations in

the complaint must be accepted as true and viewed in the light most favorable to the non-moving party. *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir.1989) (citations omitted). Under a Rule 12(b)(6) motion, "the issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir.2000) (citations and internal quotation marks omitted).

## III. *DISCUSSION*

When Congress enacted ERISA, it included a preemption provision which provides that ERISA supersedes all state laws insofar as they "relate to any employee benefit plan." 29 U.S.C. § 1144(a). However, since the states are allowed to regulate insurance, Congress also included a saving clause which returns to the states the power to enforce those state laws that "regulate insurance." 29 U.S.C. § 1144(b)(2)(A). There is no dispute that the Pennsylvania bad faith statute "relates to" employee benefit plans, therefore, the next question to be decided by this Court is whether Section 8371 "regulates insurance" so that the Pennsylvania statute may be saved from preemption by ERISA. *Id.*

■ In order to determine whether Section 8371 regulates insurance within the meaning of ERISA's saving clause, the Court must conduct a two-part test, the *Miller* test, with Section 8371 satisfying both prongs in order to be saved from preemption. *See Kentucky Ass'n of Health Plans, Inc. v. Miller,* — U.S. ——, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003). First, "the state law must be specifically directed toward entities engaged in insurance." *Miller,* — U.S. ——, ——, 123 S.Ct. 1471, 1479, 155 L.Ed.2d 468 (2003)(citing *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 51, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *UNUM Life Ins. Co. v.*

*Ward,* 526 U.S. 358, 368, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999); *Rush v. Moran,* 536 U.S. 355, 366, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002)). Second, "the state law must substantially affect the risk pooling arrangement between the insurer and the insured." *Id.* Lastly, even if Section 8371 satisfies the above criteria to survive preemption, the statute may still be preempted if the statute conflicts with Congress' exclusive remedial scheme of ERISA by providing for an alternative remedy. *Pilot Life,* 481 U.S. at 52–54, 107 S.Ct. 1549.

### A. *Section 8371 is a Law which is Specifically Directed Toward Entities Engaged in Insurance.*

■ The Pennsylvania bad faith statute provides:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons.Stat. Ann § 8371. Under this prong, Section 8371 must be "specifically directed toward entities engaged in insurance." *Miller,* — U.S. ——, ——, 123 S.Ct. 1471, 1479, 155 L.Ed.2d 468. Using this guideline, Section 8371 is clearly directed toward the insurance industry since the statute is limited to only "an action arising under an insurance policy." 42 Pa. Cons.Stat. Ann § 8371. Therefore, having

satisfied the first prong of the *Miller* test, I turn to the second prong.

### B. Section 8371 Does Not Substantially Affect the Risk Pooling Arrangement Between the Insurer and the Insured.

■ This prong requires the Court to examine whether "the state law itself", Section 8371, "substantially affects the risk pooling arrangement between the insurer and the insured." *Miller,* —— U.S. ——, —— – ——, 123 S.Ct. 1471, 1478–79, 155 L.Ed.2d 468. In *Pilot Life,* the Court inquired whether the Mississippi law of bad faith had the effect of transferring or spreading risk. *Pilot Life,* 481 U.S. 41, 50, 107 S.Ct. 1549, 95 L.Ed.2d 39. The Mississippi bad faith law, just like Section 8371, allowed an ERISA plan participant whose claim was improperly processed to seek punitive damages. *Pilot Life,* 481 U.S. at 50, 107 S.Ct. 1549. The *Pilot Life* Court concluded that the Mississippi bad faith statute concerned the "the policy relationship between the insurer and the insured" however, that law which imposed damages upon an insurer as punishment for acting in bad faith towards its insured, did not "effect a spreading of policyholder risk." *Id.* Therefore, for the same reasons as those given in *Pilot Life,* I find that Section 8371 does not substantially affect the risk pooling arrangement between the insurer and the insured, thereby failing to satisfy the second prong of the *Miller* test.

Section 8371 must satisfy both prongs of the *Miller* test in order for the statute to fall within the saving clause of ERISA and be saved from preemption. *Miller,* —— U.S. ——, ——, 123 S.Ct. 1471,1479, 155 L.Ed.2d 468. Accordingly, since Section 8371 does not satisfy the second prong of the *Miller* test, Section 8371 is preempted by ERISA.

### C. Section 8371 Allows Additional Remedies Unavailable Under the ERISA Scheme of Enforcement.

■ "Pre-emption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *FMC Corp. v. Holliday,* 498 U.S. 52, 56–57, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990)(internal citations omitted). Further, "if the intent of Congress is clear, that is the end of the matter; for the court . . . must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842–843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Regardless of the outcome of the *Miller* test, even if Section 8371 did come within the realm of the saving clause, the statute is ultimately preempted by ERISA since Section 8371 creates the additional remedy of punitive damages which is unavailable under the possible ERISA remedies.

McGuigan agrees with this Court that Section 8371 allows for an alternative remedy. He contends, however, that once Section 8371 falls within the saving clause, which I did not find, the fact that it allows for an alternative remedy should be ignored. McGuigan contends that the Supreme Court's recent decisions in *Ward* and *Rush* may cast doubt upon its decision in *Pilot Life* where the Court struck down the state statute because it allowed for the recovery of punitive damages which conflicts with purpose of ERISA by allowing an additional ERISA remedy. However, *Rush* reaffirms the Court's prior decisions which uphold Congress' intent that the civil enforcement provisions of ERISA be the exclusive remedies available in actions asserting improper processing of a claim for benefits.

In *Pilot Life,* the plaintiff, an ERISA plan participant, sued the defendant seeking damages for breach of contract, emotional distress and punitive damages pursuant to the Mississippi law of bad faith which allowed an ERISA plan participant whose claim was improperly processed to seek punitive damages. While the Court initially found that the Mississippi law of bad faith did not "regulate insurance", its analysis did not end there as McGuigan suggests I should do here. The Court, in discussing the importance of Congress' intent behind enacting ERISA, explained that "[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Pilot Life,* 481 U.S. at 51, 107 S.Ct. 1549 (internal citations omitted). The *Pilot Life* Court, in ruling that punitive damages constitute an additional remedy, explained as follows:

> [the provisions of ERISA] set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. **The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.**

*Id.* at 54, 107 S.Ct. 1549 (emphasis added). The Court reiterated its earlier decision where it held that ERISA provides no authority for an award of punitive damages by stating that " 'the six carefully integrated civil enforcement provisions found in § 502(a) of the [ERISA] statute as finally enacted ... provide strong evidence that Congress did not intend to au-

thorize other remedies that it simply forgot to incorporate expressly.' " *Id.* (quoting *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)). Therefore, the *Pilot Life* Court, after considering whether the Mississippi bad faith law "regulated insurance", concluded that the plaintiff's state law claim was preempted by ERISA since Congress did not provide such a remedy in the ERISA statute.

The Supreme Court's recent holding in *Rush* reaffirms its *Pilot Life* decision that ERISA's civil enforcement provisions provide the only available six remedies which may be sought in an ERISA action. In *Rush,* the plaintiff, a participant in an employee benefit plan, brought suit against the defendant health maintenance organization ("HMO"). See *Rush v. Moran,* 536 U.S. 355, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002). The plaintiff argued that the Illinois HMO Act which provided for an independent review hearing for a denied insurance claim amounted to an "alternative remedy" which would be forbidden under Pilot Life. *Rush,* 122 S.Ct. at 2165–66. The *Rush* Court explained that the Illinois HMO statute did not expand the potential scope of liability imposed upon employers like the statute in *Pilot Life* which allowed punitive damages. The *Rush* Court repeated that "[a]ny such provision patently violates ERISA's policy of inducing employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred." *Rush,* 122 S.Ct. at 2157 (quoting *Pilot Life,* at 56, 107 S.Ct. 1549).

Section 8371 allows an ERISA plan participant to recover punitive damages for bad faith conduct which is incompatible with ERISA's enforcement scheme. Accordingly, even if Section 8371 did satisfy

both prongs of the *Miller* test so as to fall within the saving clause of ERISA by regulating insurance, the Pennsylvania bad faith statute would still be preempted by ERISA since the statute provides for a form of relief that adds to those available remedies already provided by ERISA.

## IV. *CONCLUSION*

For all the foregoing reasons, Reliance's Motion to Dismiss Count II of Plaintiff's Complaint is granted.

An appropriate Order follows.

## ORDER

AND NOW, this 9th day of April 2003, upon consideration of the Defendant's Motion to Dismiss Count II of Plaintiff's Complaint, it is hereby **ORDERED** that said Motion is **GRANTED** and Count II of Plaintiff's Complaint is **DISMISSED WITH PREJUDICE.**