Frank W. LEUTHNER, William Reasner, and All Others Similarly Situated, Plaintiffs,

v.

**BLUE CROSS AND BLUE SHIELD OF NORTHEASTERN PENNSYLVANIA, Defendant.**

No. 4:CV–02–1709.

United States District Court, M.D. Pennsylvania.

July 11, 2003.

Kristofor T. Henning, Mary Catherine Roper, John F. Schultz, Drinker, Biddle & Reath, LLP, Philadelphia, PA, for Defendants.

Rodney L. Knier, Rieders, Travis Law Firm, Clifford A. Rieders, Rieders, Travis, Humphrey, Harris, Waters & Waffenschmidt, Williamsport, PA, for Plaintiffs.

## MEMORANDUM AND ORDER

JONES, District Judge.

### PROCEDURAL HISTORY:

The plaintiffs, Frank W. Leuthner ("Leuthner") and William Reasner ("Reasner") (together, "Plaintiffs"), initiated this action by filing a class action complaint on September 26, 2002, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et. seq.* and Pennsylvania state law.

This suit was brought by Plaintiffs in their capacity as retired salaried employees of the defendant, Blue Cross and Blue Shield of Northeastern Pennsylvania ("Blue Cross" or "Defendant"), and as participants in the Blue Cross of Northeastern Pennsylvania Retiree Health Insurance Plan ("the Plan"), an employee welfare plan sponsored and administered by Blue Cross which is subject to ERISA. Plaintiffs' Complaint is set forth in three counts. All counts arise from an amendment to the Plan which went into effect on January 1, 2001, and resulted in a reduction of health care benefits to Plan participants. In Count I, Plaintiffs assert that the implementation of the amended Plan was a breach of Blue Cross' fiduciary duty to the Plan's participants and beneficiaries. (*See* Complaint at ¶¶ 46–48). In Count II, Plaintiffs assert a claim of detrimental reliance and estoppel based upon allegations that Blue Cross had misrepresented to Plaintiffs that they would receive lifelong fully funded health insurance coverage under the Plan. (*See* Complaint at ¶¶ 51–54). Finally, in Count III, Plaintiffs allege that Defendant's course of conduct constitutes bad faith under the Pennsylvania Bad Faith Statute, 42 Pa.C.S.A. § 8371.

On July 9, 2003, this Court issued an order denying Plaintiffs' Motion for Class Certification.

Currently pending before the Court is Defendant's Motion to Dismiss, filed on December 6, 2002, and Plaintiffs' Cross Motion Pursuant to Rule 56(f), filed on July 7, 2003.

Subsequent to conducting a preliminary review of the Motion to Dismiss and the briefs filed by the parties in connection with it, we issued an order on June 13, 2003 providing the parties with notice that pursuant to Federal Rule of Civil Procedure 12(b) we would convert the Motion to Dismiss into a motion for summary judgment. *See* Fed.R.Civ.P. 12(b)("If matters outside the pleading are presented to and are not excluded by the court, the motion

shall be treated as a motion for summary judgement and disposed of as provide din Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent by such a motion by Rule 56"). The June 13, 2003 Order granted the parties ten days within which to submit additional materials for the Court's consideration in disposing of the Motion in accordance with the standards applicable for motions for summary judgment brought pursuant to Federal Rule of Civil Procedure 56.

This matter is now ripe for disposition. For the reasons that follow, we will grant the Motion for Summary Judgment and deny the Cross Motion Pursuant to Rule 56(f).

### STANDARD OF REVIEW:

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c); *see also Turner v. Schering–Plough Corp.,* 901 F.2d 335, 340 (3d Cir.1990). The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial." *Young v. Quinlan,* 960 F.2d 351, 357 (3d Cir.1992). Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences which a fact finder could draw from them. *See Peterson v. Lehigh Valley Dist. Council,* 676 F.2d 81, 84 (3d Cir.1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corporation v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. *See id.* at 325, 106 S.Ct. 2548.

Rule 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e). The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor. *See Celotex Corporation v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." *Pastore v. Bell Tel. Co. of Pa.,* 24 F.3d 508, 511 (3d Cir.1994) (citation omitted). However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "As to materiality, the substantive law will identify which facts are material." *Id.* at 248, 106 S.Ct. 2505. A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

*RELEVANT FACTUAL BACKGROUND:*

Some of the facts in this matter are highly disputed. We will, where necessary, view the facts and all inferences to be drawn from them in the light most favorable to the nonmoving party in our analysis of each motion.

As noted previously, Plaintiffs are participants in the Plan, which is sponsored and administered by Blue Cross.

Prior to the January 1, 2001 amendment to the Plan, Blue Cross contributed a percentage of the cost of medical benefits coverage available to its retirees and their surviving spouses based upon the retirees' years of service. Effective January 1, 2001, the Plan was altered such that coverage to surviving spouses was eliminated and eligible retirees received a fixed dollar amount from Blue Cross each month, calculated based upon the retiree's years of service at Blue Cross, to be utilized for the purpose of purchasing health care insurance coverage.

At the time of their retirement, Plaintiffs had both accumulated over twenty-five years of service with Blue Cross. In accordance with the aforementioned contractual schemes, prior to January 1, 2001, Blue Cross paid the entire cost of Plaintiffs' post-retirement medical insurance. However, subsequent to the January 1, 2001 amendment, Blue Cross paid, and apparently continues to pay, each Plaintiff $175 per month for their medical insurance costs.

According to Plaintiffs, during the course of their employment (and prior to the January 1, 2001 amendment), they and other Blue Cross employees were promised by numerous agents of Blue Cross, acting as fiduciaries of the Plan, that the benefits to which they were entitled under the Plan would be funded entirely by Blue Cross for the remainder of their lives or the lives of their dependents entitled to benefits under the Plan. Consequently, Plaintiffs expected that neither they nor their surviving spouses would contribute to the cost of their health insurance coverage during their retirement.

*MOTION FOR SUMMARY JUDGMENT:*

**A. Breach of Fiduciary Duty**

Plaintiffs' Complaint alleges as follows:

46. As a fiduciary under ERISA, Defendant has a duty, pursuant to Section 404(a) of the Act, to administer its Plan solely in the interest of the Plan's participants and beneficiaries.

47. *Defendants' implementation of the revised Plan, after having represented to Plaintiffs that they would enjoy lifelong health insurance benefits, unfunded entirely by Defendants, would be a breach of Defendants' fiduciary duty,* under ERISA, to act solely in the interest of Plaintiffs, as participants in the Defendants' Plan.

48. *Defendants' implementation of the revised Plan, in order to enhance its own financial standing, would be a breach of Defendants' fiduciary duty,* under ERISA, to act solely in the interest of Plaintiffs, as participants in Defendants' Plan.

(*See* Complaint at ¶¶ 46–48)(emphasis added).

The only reasonable interpretation of these allegations is that Plaintiffs' claim for breach of fiduciary duty is based upon the premise that the act of amending the Plan, despite the fact that Blue Cross representatives had previously indicated to Plaintiffs that they and qualified dependents were entitled to fully funded lifetime benefits, amounts to a breach of Blue Cross' fiduciary duty.

█ We reiterate this point because within their brief in opposition to the Motion to Dismiss, Plaintiffs assert that Blue

Cross "has misapprehended the nature of Plaintiffs claims" and that

> [i]t is not Blue Cross's act of amending the Plan that is claimed to be a breach of their fiduciary duties but the acts and omissions of the fiduciaries in counseling the Plaintiffs that, as a retirement benefit, that they had lifetime medical benefits without making reference to the claimed reservation of rights, even though the representatives were aware that many employees mistakenly understood such counsel to mean that such benefits became vested at the time of retirement, and/or in affirmatively representing to the Plaintiffs that their medical benefits were guaranteed once they retired, when the company knew in fact this was not true. (sic)

(Pls.' Br. Opp. Def.'s Mot. Dis. At 7). Plaintiffs' reasoning is unconvincing. The allegations within Plaintiffs' Complaint are clear and unambiguous: it is the act of implementing the amendment to the Plan, not the act of advising Plaintiffs that they were entitled lifetime fully funded benefits under the Plan, that Plaintiffs have asserted constitutes a breach of Blue Cross' fiduciary duty. We will not permit Plaintiffs to sidestep their obligation to properly plead allegations within their Complaint by adopting arguments within their brief that are inconsistent with the allegations actually plead. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 181(3d Cir.1988)(*quoting Car Carriers Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984))("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss"). In effect therefore, we will consider the viability of Plaintiffs' claim that the January 1, 2001 amendment to the Plan constitutes a breach of fiduciary duty.

■ To determine whether or not a breach of a fiduciary duty imposed by ERISA has occurred, we must initially determine whether the act complained of constitutes a fiduciary function.[1] *See Horvath v. Keystone Health Plan East, Inc.,* 2002 WL 265023, at \*2, 2002 U.S. Dist. Lexis 3042, at \*5(E.D.Pa. Feb. 22, 2002). This determination is relatively uncomplicated in this case because the Third Circuit has specifically held that ERISA fiduciary obligations do not apply to the amendment of an employee benefit plan. *See Walling v. Brady,* 125 F.3d 114, 120(3d Cir.1997)(*citing Lockheed Corp. v. Spink,* 517 U.S. 882, 889, 116 S.Ct. 1783, 135 L.Ed.2d 153(1996)); *see also Mushalla v. Teamsters Local No. 863 Pension Fund,* 152 F.Supp.2d 613, 623(D.N.J.2001)("Amending, altering or terminating a plan ... does not trigger fiduciary duties regardless of who undertakes those functions."). Therefore, we will grant summary judgment as to Count I of Plaintiff's Complaint.

■ We do, however, take cognizance of the fact that allegations that fiduciaries intentionally misrepresented the benefits to which plan beneficiaries were entitled may support a breach of fiduciary duty claim. *See Mushalla v. Teamsters Local No. 863 Pension Fund,* 152 F.Supp.2d 613, 627 n. 6(D.N.J.2001); *see also In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.,* 242 F.3d 497(3d Cir.2001)(*Unisys II*). Therefore, we will grant Plaintiffs leave to amend Count I of their Complaint so as to properly plead these allegations.

### B. Equitable Estoppel

■ A plaintiff pursuing an equitable estoppel claim pursuant to ERISA must establish the following elements: "(1) a material representation, (2) reasonable and detrimental reliance on the representation, and (3) extraordinary circumstances." *Curcio v. John Hancock Mut. Life Ins.*

---

**1.** The various fiduciary duties are set forth in   29 U.S.C. § 1104.

*Co.,* 33 F.3d 226, 235(3d Cir.1994)(*citing Smith v. Hartford Ins. Group,* 6 F.3d 131, 137(3d Cir.1993)).

Blue Cross contends that Plaintiffs' equitable estoppel claim is not viable because Plaintiffs cannot establish the *reasonable* reliance element of the cause of action. The cornerstone of Blue Cross' argument is that the 1993 and 1998 summary plan descriptions ("SPDs") each contain reservation of rights clauses ("RORs") which unequivocally provide, respectively, that Blue Cross "may discontinue retiree health coverage for all retirees at any time" and that Blue Cross "reserves the right to modify or amend the Plan, in whole or in part, or terminate the Plan at any time and for any reason." [2] (Complaint, Ex. A at 6; Complaint, Ex. G at 4). Indeed, the 1993 Plan itself provides that Blue Cross "reserves the right to amend the Plan in any respect and to terminate the Plan for retirees at any time." (Def.'s Mot. Dis. Ex. C at 24).

Plaintiffs' arguments with regard to the viability of their equitable estoppel claim are twofold. First, Plaintiffs cite § 16 of the 1993 SPD, which they assert does not constitute sufficient notice that Blue Cross reserved the right to alter the benefits to which they had been entitled pursuant to the Plan.[3] Section 16 provides as follows:

**How Retiree health insurance coverage can change:**

Subject to the other conditions of this paragraph, the Employer intends to continue retiree health insurance coverage on a *shared cost basis* after March 31, 1993.

Retirees who retire on or before March 31, 1993, will be covered by the existing retiree health insurance program until changes are made by the Employer for the succeeding Plan year.

The Employer may *change* the insurance *contracts* providing benefits under this Plan effective the next plan year and a contract change may also reduce benefits, exclude prior covered illnesses, exclude treatments from coverage, and/or change the cost sharing formula. The Employer and Plan Sponsor may *discontinue* retiree health coverage for all retirees at any time effective with the 1st day of the month after publication in a newspaper of general circulation and any employee newsletter, and notice to retirees.

(Complaint, Ex. A at 6)(emphasis in original). Plaintiffs argue that this language is both vague and ambiguous, and can be "reasonabl[y] read to permit the Plan to change the insurance contract itself but not to permit an amendment to the Plan that would have the effect of changing the cost sharing formula." (Pls.' Br. Opp. Def.'s Mot. Dis. At 16). Next, Plaintiffs maintain that even if the 1993 SPD "is sufficient to have appri[s]ed the Plaintiffs that the [P]lan could be amended to take away their lifetime benefits, the wording of the Defendant's 1999 ... benefits [book],[4]

**2.** "ERISA's framework ensures that employee benefit plans be governed by written documents and summary plan descriptions, which are the statutorily established means of informing participants and beneficiaries of the terms of their plan and its benefits." *In re Unisys Corp. Retiree Medical Benefit "ERISA" Litig.,* 58 F.3d 896, 902(3d Cir.1995) (citations omitted)(*Unisys I*). "Accordingly, any retiree's right to *lifetime* medical benefits under a plan can only be found if it is established by the terms of the ERISA-governed employee benefit plan." *Id.* (emphasis added).

**3.** Portions of § 16 were cited previously in connection with Defendant's argument that the 1993 SPD contained a reservations of rights clause which constituted proper notice to Plaintiffs that the Plan could be amended.

**4.** Plaintiffs refer to the benefits book as "the 1999 SPD / benefits book" within their Brief in Opposition to Defendant's Motion to Dismiss. However, the Complaint refers to the same exhibit simply as a "benefits book." (Complaint at ¶¶ 26, 39, 40). The latter description is most accurate for there is no

directly and unequivocally states the exact opposite in terms and language that would clearly and reasonably lead an individual to believe that they had lifetime paid health insurance." (Pls.' Br. Opp. Def.'s Mot. Dis. at 17). Plaintiffs cite the following language as support of their argument:

"The no cost health insurance benefit is something that is very important to some of us and is one of the benefits that sets Blue Cross apart from other organizations."

(Complaint, Ex. E at 3).

"During your retirement years you will be faced with several life changes. It is inevitable. However, you do have some control in managing theses changes. As a retiree of Blue Cross of Northeastern Pennsylvania, you have the peace of mind of knowing that you are covered by an outstanding, comprehensive retirement benefits package. We feel that providing these benefits gives you the comfort and assurance you need in order to enjoy life during your golden years."

(Complaint, Ex. E at 17).

"Retirement means it is time to enjoy the peace of mind that comes from not having to work anymore. Planning travel time, spending time with your family and friends or just plain relaxing may be the focus of your days. The last thing you should have to worry about is your health insurance.

**That is why Blue Cross of Northeastern Pennsylvania is dedicated to providing our retirees with a comprehensive healthcare package."**

(Complaint, Ex. E at 18)(emphasis in original).

Further, Plaintiffs emphasize that the 1999 benefits book does not contain a reservation of rights clause or refer to Blue Cross' purported right to modify benefit schedules, levels or cost sharing allocations.

indication on the face of the benefits book

Plaintiffs contend, in essence, that the language contained in various Plan materials is contradictory and creates an ambiguity as to the exact nature of the benefits to which Plaintiffs were entitled. On this basis, Plaintiffs maintain that the motion for summary judgment must be denied as to their equitable estoppel claim.

■ Determining whether or not various Plan materials are ambiguous is a question of law for the Court to decide. *Unisys I*, 58 F.3d at 902(*citing Taylor v. Continental Group*, 933 F.2d 1227, 1232(3d Cir.1991)).

■ At the outset, it is important to note that "[e]xtra-ERISA commitments, such as the right to receive free lifetime coverage, must be found in the plan documents and stated in clear and express language." *Id.* at 902(*citing Wise v. El Paso Natural Gas*, 986 F.2d 929(5th Cir. 1993); *Alday v. Container Corp. of America*, 906 F.2d 660, 665(11th Cir.1990)). Moreover, "[t]he written terms of the plan documents control and cannot be modified or superseded by the employer's oral undertakings." *Id.* (citations omitted).

■ In *Unisys I*, a case closely analogous to this one, the plaintiff retirees asserted an equitable estoppel claim against their former employer on the basis of alleged "informal oral and written communications" which described their medical benefits as being " 'for life' or for the 'lifetime' of the retiree and spouse." *Unisys I*, 58 F.3d at 900. As in the case at bar, the defendant employer in *Unisys I* responded that regardless of the existence of that terminology, the benefits provided within the plan had not vested because the relevant company benefits plans contained unambiguous reservation of rights clauses which served to preserve the defendant employer's right to alter the plans. In

that it purports to be an SPD.

finding that no inconsistency or ambiguity existed in the plan language, the Third Circuit reasoned that:

> [a]n employer who promises lifetime medical benefits, while at the same time reserving the right to amend the plan under which those benefits were provided, has informed plan participants of the time period during which they will be eligible to receive benefits *provided* the plan continues to exist.

*Id.* at 904(emphasis in original).

Consistent with the Third Circuit's holding in *Unisys I*, because Blue Cross stated "clearly and unequivocally" in the SPDs that the company reserved the right to modify or amend the Plan, we hold that Plaintiffs cannot establish the reasonable reliance element of their equitable estoppel claim.[5] *Id.* Summary judgment will therefore be granted as to Count II of Plaintiffs' Complaint.

## C. Bad Faith

■■■ ERISA provides that state law claims that "relate to any employee benefit plan" are preempted by the statute. 29 U.S.C. § 1144(a). However, ERISA specifically saves those state laws "which regulat[e] insurance" from preemption. 29 U.S.C. § 1144(b)(2)(a). In this case, there is no dispute that the Pennsylvania Bad Faith Statute ("Section 8371"), 42 Pa. Cons.Stat. Ann. § 8371, "relate[s] to" an employee benefit plan. 29 U.S.C. § 1144(a); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)(citing case law for the proposition that the term "relate to" has been given a broad meaning). Therefore, unless Section 8371 "regulates insurance" within the meaning of ERISA such that it falls within the protection of ERISA's savings clause, Plaintiffs' claim of bad faith must be dismissed because it will be superseded by ERISA.

Recently, in *Kentucky Association of Health Plans Inc. v. Miller,* the Supreme Court developed a new two-part test to be utilized in determining whether a state law should be considered one "which regulates insurance" under § 1144(b)(2)(A).[6] *See Kentucky Assoc. of Health Plans Inc. v. Miller*, —— U.S. ——, 123 S.Ct. 1471, 1479, 155 L.Ed.2d 468(2003). "First, the state law must be specifically directed toward entities engaged in insurance. Second, ... the state law must substantially affect the risk pooling arrangement between the insurer and the insured." *Miller*, —— U.S. at ——, 123 S.Ct. at 1479(*citing Pilot Life*, 481 U.S. at 50, 107 S.Ct. 1549; *UNUM Life Ins. Co. of America v. Ward*, 526 U.S. 358, 368, 119 S.Ct. 1380, 143 L.Ed.2d

---

5. Significantly, even the benefits book referred to by Plaintiffs states that the "brochure is intended as an overview only," and that "Blue Cross reserves the right to modify, amend or terminate any benefit programs at any time." (Complaint, Ex. E at 4).

With regard to Plaintiffs' claim that the 1993 SPD can be read to permit changes to the insurance contract but not to the cost sharing formula set forth within the contract in particular, we agree with Blue Cross that "[i]t is simply not reasonable to suggest that this language can be read to mean that the insurance contracts can be changed, but that such a change would not result in a change to the benefits of the participants." (Def.'s Rep. Br. Supp. Mot. Dis. at 10).

6. Prior to *Miller,* courts utilized case law relating to the McCarran–Ferguson Act to determine whether state laws were preempted by ERISA. *See Miller*, —— U.S. at ——, 123 S.Ct. at 1478. Three factors were relevant to this analysis: "first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry." *Id.* (*quoting Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982)(emphasis omitted)).

462(1999); *Rush Prudential HMO, Inc. v. Moran,* 536 U.S. 355, 366, 122 S.Ct. 2151, 153 L.Ed.2d 375(2002)). "[E]ven if Section 8371 satisfies the above criteria to survive preemption, the statute may still be preempted if the statute conflicts with Congress' exclusive remedial scheme of ERISA by providing for an alternative remedy." *McGuigan v. Reliance Standard Life Ins. Co.,* 256 F.Supp.2d 345 (E.D.Pa.2003)(*citing Pilot Life,* 481 U.S. at 52–54, 107 S.Ct. 1549).

Section 8371 provides as follows:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371. By virtue of the fact that the statute applies only to those actions "arising under an insurance policy[,]" we conclude that Section 8371 satisfies the first prong of the *Miller* test. *See McGuigan,* 256 F.Supp.2d 345.

Next, we consider whether Section 8371 "substantially affect[s] the risk pooling arrangement between the insurer and the insured." *Miller,* —— U.S. at ——, 123 S.Ct. at 1479. In *Pilot Life,* the Supreme Court analyzed the Mississippi common

law of bad faith and concluded that it "does not affect a spreading of policyholder risk." *Pilot Life,* 481 U.S. at 50, 107 S.Ct. 1549. The Supreme Court based its conclusion upon the fact that the Mississippi "common law of bad faith does not define the terms of the relationship between the insurer and the insured; it declares only that, whatever terms have been agreed upon in the insurance contract, a breach of that contract may in certain circumstances allow the policyholder to obtain punitive damages." *Id.* at 51, 107 S.Ct. 1549. Like the Mississippi common law of bad faith, Section 8371 serves a remedial function and designates specific awards that a court may grant in the event that a breach of an insurance contract has occurred. On this basis, we conclude that Section 8371, like the Mississippi common law of bad faith, does not substantially affect the risk pooling arrangement between the insurer and insured.[7] *See McGuigan,* 256 F.Supp.2d 345("Section 8371 does not substantially affect the risk pooling arrangement between the insurer and the insured ..."); *see also Morales–Ceballos v. First Unum Life Ins. Co. of Amer.,* 2003 U.S.Dist. Lexis 9801 (E.D.Pa. May 28, 2003)("Pennsylvania's bad faith statute does not substantially affect the risk pooling arrangement between the insurer and the insured."); *Tutolo v. Independence Blue Cross,* 1999 WL 274975, *3, 1999 U.S.Dist. Lexis 6335, *7 (E.D.Pa. May 5, 1999)(*citing Clancy v. Unum Life Ins. Co. of America,* 1996 WL 543929, *3–4, 1996 U.S.Dist. Lexis 14049, *8–9

---

7. Plaintiffs appear to concede that Pennsylvania's Bad Faith Statute does not have the affect of transferring or spreading a policyholder's risk. Within their Brief in Opposition to Defendant's Motion to Dismiss, Plaintiffs did not argue that Section 8371 met the first of the McCarran–Ferguson factors—that the statute had "the effect of transferring or spreading a policyholder's risk." 59 Stat. 33, as amended, 15 U.S.C. § 1101 *et seq.* Plain-

tiffs' Brief in Opposition was submitted prior to the *Miller* holding, which enumerated new factors, utilized herein, that courts should examine to determine whether ERISA preemption is warranted. However, the issue of whether Section 8371 affects the risk pooling arrangement between insurers and insureds is common to both the McCarran–Ferguson factors and the *Miller* test.

(E.D.Pa. Sept. 23, 1996)); *Zimnoch v. ITT Hartford*, 2000 WL 283845, *6, 2000 U.S.Dist. Lexis 2846, *18 (E.D.Pa. Mar. 14, 2000).

Because Section 8371 does not meet the second prong of the *Miller* test, we conclude that it does not fall within the savings clause of ERISA. Section 8371 is therefore preempted by ERISA.[8] Accordingly, summary judgment will be granted as to Count III of Plaintiffs' Complaint.

### MOTION PURSUANT TO RULE 56(f):

■■■■ Federal Rule of Civil Procedure 56(f) provides as follows:

> **When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f)(emphasis in original).

Thus far, the parties in this case have only had the opportunity to conduct discovery relevant to Plaintiffs' Motion for Class Certification. That Motion was denied by this Court on July 9, 2003. Plaintiffs now request additional time to conduct merit based discovery so that they may more adequately present arguments in opposition to the pending Motion for Summary Judgment.

According to the Third Circuit, whether a Rule 56(f) "motion should be granted depends, in part, on what particular information is sought; how, if uncovered it would preclude summary judgment; and why it has not previously been obtained." *Contractors Assoc. of Eastern Pennsylva-*

*nia, Inc. v. City of Philadelphia*, 945 F.2d 1260, 1266(3d Cir.1991)(internal quotations and citations omitted).

Here, Plaintiffs have provided an voluminous list and supporting affidavits incorporating information they intend to acquire through discovery which they assert "will demonstrate that the Defendant[ ] ha[s] breached [its] fiduciary duties and will establish that [Defendant is] equitably estopped, by virtue of [its] acts and omissions, from breaching [its] promise to [its] retirees of lifetime, fully company paid, insurance for the retiree and their spouse." (Pls.' Cr. Mot. Purs. Rule 56(f) at 9).

As to the allegation that Blue Cross breached its fiduciary duties to Plaintiffs, for the reasons stated previously in our analysis, Count I does not, as plead, state a valid breach of fiduciary duty claim. Our conclusion in that regard is based purely upon Plaintiffs' failure to properly plead allegations within their Complaint; an examination of factual disputes was irrelevant to our analysis. Necessarily then, additional discovery would have no value to our determination. The Rule 56(f) motion will therefore be denied with regard to Count I. We note, however, that as a practical matter, discovery as to this claim will in all likelihood recommence since we have granted Plaintiffs leave to file an amended complaint.

Next, we must consider whether additional discovery could impact our holding that summary judgment is appropriate with respect to Plaintiffs' equitable estoppel claim. Plaintiffs have indicated within their Rule 56(f) Motion that the information they intend to discover relevant to this claim includes: "[w]hether the various SPDs in this matter were sufficient to permit Blue Cross to amend the Plan to

---

**8.** Based on our finding, we will not address whether or not Section 8371 conflicts with

ERISA with regard to the remedies available pursuant to each of the statutes.

breach the promise; [w]hether the 1999 brochure amounts to a restatement, without reservation of rights, of the promise to the class members which would, in and of itself, counter the prior claimed reservations of rights[;] … [w]hether each Plaintiff in the proposed Class has relied on Defendant's promise of lifelong, company paid, health insurance to determine when they would retire, and in some cases whether they would retire early, or at all[;] … [w]hether the Defendant['] s statements (written and oral), acts, actions, representations and/or assertions created an implied contract between the Defendant and the individual members of the class providing for the provision of lifetime health insurance benefits, funded entirely by Defendant[ ], as a bargained for component of the employment contract; [w]hether the Defendant's written statements and assertions created an express written contract between the Defendant and the individual members of the class providing for the provision of lifetime health insurance benefits, funded entirely by Defendant[ ], as a bargained for component to the employment contract[;][w]hether the Defendant's written statements and assertions created an implied written contract between the Defendant and the individual members of the class providing for the provision of lifetime health insurance benefits, funded entirely by Defendant[ ], as a bargained for component to the employment contract[.]" (Pls.' Cr. Mot. Purs. Rule 56(f) at 4–7).

Our holding that Defendant is entitled to summary judgment with regard to Plaintiff's equitable estoppel claim is premised upon our finding that as a matter of law, Plaintiffs did not establish the reasonable detrimental reliance element of the cause of action. To the extent that Plaintiffs seek additional time within which to discover information supporting their claim of reliance, their request will be denied because any information which would tend to prove reasonable reliance would, by virtue of the nature of a reliance claim, necessarily already be within their possession. Moreover, to the extent that Plaintiffs refer to the existence of a separate express or implied written contract that was breached by Blue Cross, these allegations are not a part of any cause of action asserted within their Complaint and additional discovery as to such claims will not be permitted.

Finally, Plaintiffs have indicated within the list of discoverable information provided that they also seek to discover "[w]hether the acts and omissions of the Defendant were done in bad faith … [and][w]hether Defendant's alleged bad faith acts were … willful, wanton, malicious and with complete indifference to the rights of Plaintiffs." (Pls.' Cr. Mot. Purs. Rule 56(f) at 6). However, because the facts specific to the case at bar were irrelevant to our holding that Section 8371 is preempted by ERISA, additional discovery as to this point would be superfluous. Further discovery will accordingly be precluded as to Count III of the Complaint.

### CONCLUSION:

Based upon the foregoing, summary judgment will be granted as to Counts II and III of Plaintiffs' Complaint. Summary judgment shall also be granted as to Count I of the Complaint in its present form. However, Plaintiffs shall be afforded a period of time within which to file an amended complaint addressing the concerns cited herein in reference to Count I. In the event that Plaintiffs do not file an amended complaint within the prescribed period, the Clerk shall be directed to close the file on the case.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. Defendant's Motion to Dismiss (doc. 9), which has been converted into a motion for summary judgment, is

granted. However, Plaintiffs will be granted ten days within which to file an amended complaint relating to their breach of fiduciary duty claim. If an amended complaint is not filed on or by July 25, 2003, the Clerk shall be directed to close the file on this case.

2. Plaintiffs' Cross Motion Pursuant to Rule 56(f) (doc. 47) is denied.